UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YANA ZELKIND,<br><br>    Plaintiff,<br><br>    v.<br><br>FLYWHEEL NETWORKS, INC.,<br><br>    Defendant. | Case No. 15-cv-03375-WHO<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Re: Dkt. No. 23 |

## INTRODUCTION

Defendant Flywheel Networks, Inc. contends that plaintiff Yana Zelkind is required to arbitrate the claims in her complaint for sexual harassment pursuant to a Dispute Resolution Protocol ("DRP") that was included within the Terms and Conditions Agreement ("TCA") she signed at the beginning of her employment with Flywheel. Mot. at 3 [Dkt. No. 23]. Zelkind argues that the arbitration clause is both procedurally and substantively unconscionable. Dkt. No. 30. Because the arbitration clause clearly and unmistakably assigns the question of arbitrability to the arbitrator, I GRANT the motion to compel and STAY this matter.

## BACKGROUND

On July 28, 2014, Flywheel, a technology company that connects consumers with residential real estate agents, hired Zelkind as a Sales Representative in its Sacramento office.[1] Flywheel is a customer of TriNet, which provides payroll processing and certain human resources services for Flywheel. TriNet refers to its customers as "worksite employers" and maintains an online portal for the employees of its worksite employers in order to access certain employment

---

[1] For the purposes of this motion, I rely primarily on the facts Flywheel provided by declaration as Zelkind neither contested them nor offered any evidence on her own behalf. If there is a factual basis on which to dispute arbitrability, Zelkind did not provide it.

records and information.  This online portal, called "TriNet Passport," is a password protected environment that can only be accessed using each employee's username and unique password.

On July 30, 2014, two days after beginning her employment, Zelkind logged on to the TriNet Passport.  Upon signing in, Zelkind was electronically presented with TriNet's TCA, which included the DRP.  The TCA is an approximately four page long document, which encompasses a subsection containing the DRP, which in turn is approximately one page long.  Belloise Decl., Ex. A [Dkt. No. 26] ("Agreement").  The TCA states in pertinent part as follows:

> 1. Co-Employment vs. Standard Employment
> TriNet is a licensed professional employer organization ("PEO") headquartered in San Leandro, California.
> If your relationship with TriNet is beginning because the company at which you work has become TriNet customer, this means that your company has entered into a customer service agreement with TriNet to share certain employer responsibilities as co-employers.  This means TriNet will be your employer of record for administrative purposes and will process payroll, sponsor and administer benefits, and provide certain human resources services.  As your worksite employer, your company retains the responsibilities of directing your day-to-day work and managing its business affairs.  This TCA addresses your relationship with TriNet and you and your worksite employer have and will continue to have additional terms and conditions of employment.
> …
> 9. Dispute Resolution Protocol ("DRP")
>     a. How The DRP Applies
> This DRP covers any dispute arising out of or relating to your employment with TriNet.  The Federal Arbitration Act applies to this DRP.  Also, existing internal procedures for resolving disputes, as well as the options of mediation, will continue to apply with the goal being to resolve disputes before they are arbitrated.  This DRP will survive termination of the employment relationship.  With only the exceptions described below, arbitration will replace going before a government agency or a court for a judge or jury trial.
> …
>     f. Enforcement Of The DRP
> This DRP is the full and complete agreement relating to arbitration as the means to resolve covered disputes between you and TriNet and between you and your worksite employer unless the DRP is waived by your worksite employer or superseded by other terms and conditions of your employment with your worksite employer.  If any portion of this DRP is determined to be unenforceable, the remainder of this DRP still will be enforceable, subject to the specific exception in section d, above.
> With respect to covered disputes, each party waives any rights under the law for a jury trial and agrees to arbitration in accordance with the terms of this DRP.

Agreement ¶¶ 1, 9.

The last subsection of the TCA is entitled "Acknowledgement" and provides, in part, as follows:

> By clicking below, I am acknowledging that I have read and understand the contents of this Terms and Conditions Agreement (including, but not limited to, the DRP), that I have the responsibility to read and familiarize myself with the TriNet Employee Handbook and Additional Policies for my company and that I agree to abide by the terms and conditions set forth above and the policies and procedures set forth in the Employee Handbook and Additional Policies.

*Id*. at ¶10. Zelkind agreed to the TCA by providing her email address and clicking on the button marked "I Accept."[2]

According to the complaint she filed in state court, Zelkind experienced severe and pervasive sexual harassment by her Flywheel coworkers that caused her to suffer from anxiety and acute depression. Complaint at 5-11. She was fired one day after reporting the harassment to Flywheel management. Complaint at 9. She alleges multiple violations under California Fair Employment and Housing Act as well as a cause of action for Intentional Infliction of Emotional Distress. *Id.* at 12-17. Flywheel's present motion to compel arbitration of Zelkind's claims and dismiss her complaint or, in the alternative, stay the proceedings was heard on October 7, 2015. Zelkind's counsel failed to appear.[3]

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq*. Under the FAA, a district court determines (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the

---

[2] Flywheel expressly notes that there is also a "Reject" button next to the "I Accept" button, "whereby the [employee] could choose not to accept the terms of the DRP." Mot. at 3. However, according to the TCA, acknowledgement and acceptance of the agreement is a condition of one's employment with TriNet. Agreement at 1.

[3] The Court attempted to reach Zelkind's counsel after he failed to check in for the hearing. He responded by email that he had a personal emergency and had miscalendared the hearing date. Previously, he failed to file an opposition brief timely, failed to seek leave of court to file the untimely brief until prompted by me, and failed in other ways to file pleadings that comply with the Local Rules. Counsel should either read and comply with the Federal Rules of Civil Procedure and the Local Rules and Standing Orders of this Court or reconsider practicing in federal court.

formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citation omitted).  If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

## DISCUSSION

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  Under federal law, "[t]he question whether parties have submitted a particular dispute to arbitration ... is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citations, quotation marks, and modifications omitted); *see also id*.  But if the parties clearly and unmistakably assign the arbitrability question to the arbitrator, a court will enforce the provisions of the agreement that delegate such determinations unless there is a specific challenge to the delegation clause itself. *Brennan*, 796 F.3d at 1132.  In the absence of a specific challenge, "the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed.Cir.2006).

**I.      CLEAR AND UNMISTAKABLE DELEGATION OF ARBITRABILITY**

Flywheel contends that the parties have "clearly and unmistakably agreed" to delegate the resolution of any dispute regarding the arbitrability of Zelkind's claims to an arbitrator.  Mot. at 6. Flywheel points to paragraph 9(d) of the DRP: "[t]he specific provisions of this DRP and the applicable rules of [American Arbitration Association ("AAA")] or [Judicial Arbitration and Mediation Services, Inc. ("JAMS")] will direct the arbitrator in decision regarding the enforceability of this DRP and in conducting the arbitration." Agreement at ¶9(d).  Both the AAA and JAMS provide for arbitration rules that grant the arbitrator the power to decide disputes over

4

the existence, validity, and scope of an arbitration agreement. Rule 6(a) of the Employment Arbitration Rules and Mediation Procedures for AAA states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Emp. R. 6(a). Similarly, Rule 11(b) of the JAMS Employment Arbitration Rules & Procedure provides: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Emp. R. 11(b).

The Ninth Circuit has held that incorporation of an arbitrator's arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *Brennan*, 796 F.3d at 1131 ("We therefore hold that the district court did not err in concluding that these parties' incorporation of the AAA rules constituted "clear and unmistakable" evidence of their intent to submit the arbitrability dispute to arbitration."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074-75 (9th Cir. 2013) ("We see no reason to deviate from the prevailing view that incorporation of the [arbitrator's] arbitration rules is clear and unmistakable evidence that the parties agreed the arbitrator would decide arbitrability.")  Here, parties have met this requirement by incorporating both the AAA and JAMS rules into the DRP. Agreement at ¶9(c)("Arbitration begins by bringing a claim under the applicable employment arbitration rules and procedures of either the American Arbitration Association ("AAA") or the Judicial Arbitration and Mediation Services, Inc. ("JAMS"), as then in effect and as modified by any superseding provisions of this DRP."), ¶9(d)("The specific provisions of this DRP and the applicable rules of the AAA or JAMS will direct the arbitrator in decisions regarding the enforceability of this DRP and in conducting the arbitration.")  By doing so, the parties have clearly and unmistakably agreed to allow the arbitrator to decide the arbitration provision's application, validity, and scope.

**II.    WHOLLY GROUNDLESS INQUIRY**

Having determined that the parties assigned the arbitrability question to the arbitrator, I

must now perform a second analysis as to whether the assertion of arbitration is "wholly groundless." *Qualcomm*, 466 F.3d at 1371. To do so, I "look to the scope of the arbitration clause and the precise issues that the moving party asserts are subject to arbitration," but I do not determine whether Zelkind's claims are in fact arbitrable. *Id* at 1374. This limited inquiry prevents a party from "asserting any claim at all, no matter how divorced from the parties' agreement to force arbitration." *Id*. at 1373 n.5. If a court finds that the assertion of arbitrability is not "wholly groundless," then it should stay the action pending a ruling on arbitrability by an arbitrator. *Id*. at 1371.

Flywheel's assertion that Zelkind's claims should be arbitrated is not "wholly groundless." In cases involving PEOs, such as TriNet, the issue of whether the arbitration agreement applies to both the worksite employer and the PEO is a factual inquiry. *See Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 955 (D. Ariz. 2011) (finding that the arbitration agreement, which only referenced the PEO and not the worksite employer, applied to plaintiffs' Title VII claims when the worksite employer did not have its own employees but instead all of its workers were employed by the PEO as "on-call employees," were given the PEO employee manuals, and attended employee training and orientations sessions with the PEO); *Nereim v. Premara Fin., Inc*., No. 14-cv-00096, 2014 WL 2882692, *1-2 (W.D.N.C. June 25, 2014) (holding that the arbitration agreement clearly applied to both the PEO and the worksite employer when it read "I and [PEO] agree that any legal dispute involving [PEO], Company, or any benefit plan, insurer, employee, officer, or director of [PEO] or Company (all of which are beneficiaries of this agreement to arbitrate and waiver of jury trial) arising from or relating to my employment, wages, leave, employee benefits, application for employment, or termination from employment will be resolved exclusively through binding arbitration before a neutral arbitrator….").

Here, the TCA begins by describing the relationship between TriNet and Flywheel, informing the reader that "your employer has entered into a customer service agreement with TriNet to share certain employer responsibilities co-employers." Agreement at ¶1. It goes on to explain that"[t]his TCA addresses your relationship with TriNet and your worksite employer have and will continue to have additional terms and conditions of employment." *Id*. According to the

6

TCA, the DRP is intended as the "full and complete agreement relating to arbitration as the means to resolve covered disputes between you and TriNet and between you and your worksite employer" unless otherwise supersede or waived. *Id*. at ¶9(f). Covered disputes are those "arising out of or relating to your employment with TriNet." *Id*. at ¶9(a)

This precise agreement has already been addressed in *Langford v. Hansen Technologies, LLC*, Civ. No. 3:14-cv-1870 (S.D. Cal., Nov. 19, 2014). Cooper Decl., Ex. P [Dkt. No. 24-16]. In *Langford*, a case involving allegations of disability discrimination by the onsite employer, the court found that the DRP applied to the worksite employer and was not unconscionable. *Id*. at 7. The court relied primarily on the sections quoted above to hold that the DRP makes clear that it applies to both TriNet and the worksite employer. *Id*. at 4-5. I find similarly. Because the allegations at issue relate to Zelkind's employment with TriNet, they fall within the scope of the DRP. Neither party contends it waived the DRP or that the DRP was superseded by another agreement. Therefore, as the DRP indicates, it functions as the full and complete agreement for covered disputes between the Zelkind and Flywheel.

## CONCLUSION

Flywheel's motion to compel arbitration is GRANTED. This action is STAYED pending the arbitrator's determination whether Zelkind's claims are arbitrable and, if they are, the resolution of the arbitration. The parties shall jointly advise me within 10 days of (i) the arbitrator's determination that the claims are not arbitrable, (ii) the arbitrator's award, in the event that the arbitrator determines that the claims are arbitrable, or (iii) the settlement of this dispute. The parties shall file a Joint Status Report every six months, beginning six months from the date of this Order, apprising the Court of the status of the arbitration.

**IT IS SO ORDERED**.

Dated: October 16, 2015

WILLIAM H. ORRICK
United States District Judge